### PICKMAN v HIGBEE CO

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15237. Decided May 16, 1936

Harrison & Marshman, Cleveland, for plaintiff in error.

Howell, Roberts & Duncan, Cleveland, for defendant in error.

KLINGER, GUERNSEY and CROW, JJ,
(3rd Dist) sitting by designation.

## OPINION

By GUERNSEY, J.

This is an action for personal injuries instituted in the Court of Common Pleas of Cuyahoga County. A motion by defendant for judgment upon the opening statement of counsel for plaintiff was granted by the Common Pleas Court and judgment entered for the defendant. The case is before this court on petition in error under the old appellate procedure. The parties stand before this court in the same relation as they did below and for convenience will be referred to as plaintiff and defendant.

The petition in the case, omitting the formal parts, is as follows:

"Now comes the plaintiff and says that the defendant is a corporation organized and existing pursuant to law and engaged in owning and operating a large building at the Public Square, Cleveland, Ohio, which building is devoted to carrying on a mercantile business.

"On or about the 20th day of February, 1934, and about noon, plaintiff entered the defendant's store building pursuant to its invitation to members of the general public, to trade at said store, and had entered said store through its entrance way on Ontario Street north of its intersection with Prospect Street, and had left the platform from which a stairway led down, when by reason of the recklessness and negligence of the defendant in permitting a slippery condition to exist on said platform and stairway plaintiff was caused to slip, stumble and fall, suffering the injuries more fully hereinafter set forth.

"Plaintiff says that at the time herein referred to the defendant caused and permitted an accumulation of slippery slush to be and exist on said platform and stairway and that defendant was careless and negligent in the following respects:

(1) In failing to remove said slippery condition and in failing to remove said slush.

(2) In failing to provide for the plaintiff as a customer of said store a reasonably safe entrance way.

(3) In failing to provide mats or sand or other abrasive substances after it knew or had reasonable grounds to believe that said entrance way was slippery.

(4) In failing to warn the plaintiff of the dangers incidental to said slippery condition in said entrance way.

"As a direct and proximate result of defendant's negligence plaintiff was thrown down and suffered the following injuries: She suffered severe bruises and contusions in the region of her left leg, right hand, right arm and right shoulder. Her back was twisted and the ligaments and supporting structures thereof torn. By reason of the violence of said fall she suffered abdominal injuries which she cannot describe other than by saying that she has suffered pain internally after said accident and her uterus was torn and injured, and it is reasonably certain that she will be required to undergo an abdominal operation for the repair of said conditions. She suffered a profound shock to her entire central nervous system, has been rendered sleepless and nervous and it is reasonably certain that she has been permanently impaired in her ability to perform her household duties, and that she will continue to suffer pain and discomfort in the future.

"Wherefore, plaintiff says that she has been damaged in the sum of fifteen thousand dollars, for which sum and her costs she prays judgment."

In its answer the defendant admits its corporate existence and the nature of its business, as alleged in the petition, and that on or about the time alleged in the petition, that the plaintiff claims to have fallen while entering the defendant's store; but the defendant has no knowledge with reference to the plaintiff's claim in this respect, and the defendant says that if the plaintiff did fall and receive any injuries, the same were not caused on account of any negligence on the part of the defendant; and the defendant therefore denies each and every other allegation contained in the petition not herein specifically admitted to be true.

The opening statement of counsel for plaintiff, is in the words and figures following, to-wit:

"MR. HARRISON: If the court please, and ladies and gentlemen of the jury:

In this case the evidence will show the following facts:

Marie F. Pickman, the plaintiff, is a married woman of middle age, and on February 20, 1934, about noon, had occasion to go to the defendant's store, The Higbee Company store, on the Public Square.

The Higbee Company is a corporation, and on February 20, 1934, and for many years before, had been in the retail business in the City of Cleveland, and maintained a store at the corner of Ontario and Prospect on the Public Square.

The evidence will show that February 20 was a very cold day, that the thermometer ranged from two or three above zero to about ten above zero at noon, and that the streets throughout the City of Cleveland were covered with a deep blanket of snow two or three inches in depth everywhere; that it had snowed most of the day preceding, the 19th, but had not snowed at all on the 20th.

The evidence will show that the doors of the store were opened at 9:00 o'clock in the morning and the public invited to enter that store for the purpose of trading and making purchases of its merchandise, and that pursuant to that invitation the plaintiff entered the store as a business guest to make certain purchases of merchandise.

The evidence will show that the Ontario entrance was the entranceway that she entered the store at, and that that consisted of a revolving door at the property line; that is to say, as one comes up the public sidewalk from Prospect Avenue we enter through this revolving door, and then entering that revolving door we come upon a platform which was eight feet wide and about twenty-five or thirty feet in length; that the floor of this marble platform was smooth, and made of a marble tile, and in such a fashion that the floor was quite smooth, and when wet was exceedingly slippery.

The evidence will show that during the forenoon of this day customers, and a great many of them, had been entering by that door of the entranceway, and had dragged a considerable quantity of snow in on their feet on this platform which had a marble floor, so that it was covered with a good deal of slush.

From that platform, which, as I have said, had the dimensions I have given, there led down steps, four steps to the general floor level of the store. The plaintiff came in about noon wearing galoshes, which were in good condition and which gave her a good footing, walked through the revolving door and across this platform, and as she was just about to start down the stairway, slipped and fell, and was flung headlong down the stairs and very seriously injured herself, as I shall presently say.

The evidence will show that a few minutes before Mrs. Pickman had this accident

and was hurt the porter of the store with a mop had mopped a part of that platform. Beginning at the doorway, the revolving doors. he had cleaned and cleared the floor of this water and slush to a point within about a foot of the edge of the platform where you begin to go down the stairway, and then for some reason unknown to us had not completed his work at that time, so that when Mrs. Pickman came through the revolving doors and walked across this platform the first six or seven feet of it had been mopped clean and clear, and she walked across this.

Because of the fact that a large number of people were on the stairs coming up and going down, she did not observe and had no opportunity of observing that. the last foot or so was still covered with water and slush, and as a result of the presence of that slippery slush on the last foot or so of the platform, which rendered the point where she was walking slippery and insecure, she did in fact slip, and was thrown down the stairway, and suffered injuries.

We think the evidence will also show that the store had rubber mats for that platform, but they were not used during the forenoon of that day, and were not in fact put out until five or ten minutes after she had fallen. When I say "mats" I mean rubber mats; non-skid rubber mats.

We think the evidence will show further that as a result of her fall she suffered bruises and contusions in all parts of her body, especially in the region of her left leg, right hand, right arm and right shoulder. Her back was twisted, and the ligaments and supporting structures torn. Her uterus was very severely torn, and required an operation to repair it; and the physicians can describe in more detail the conditions that resulted from this fall.

Finally we think the evidence will show that her fall was the direct result of the negligence of the defendant in the particular respects which I have stated, namely, in failing to remove the slippery slush at the edge of the platform, in stopping part way in its removal, in failing to provide mats on this platform when it knew, or ought to have known, that the marble floor was exceedingly slippery by reason of the wet, slippery slush, and in failing to warn her of the conditions and dangers of that stairway.

I ought to say also that the evidence will show—I am not sure whether I covered this, but I want to be sure—I ought to say also that the evidence will show that there was no rain or snow falling at the time, and that there had not been any since the day preceding, the 19th; that on this day, from nine o'clock when the store opened up until noon when this accident happened, there had been no snow or rain falling, and. it had been so cold that the thermometer had not gone above ten above at any time.

There was one other thing I wanted to say. The evidence will also show that numerous employees of the defendant were employed within a distance of twelve or fourteen feet of the point where this accident happened. and from the point where these clerks and employees worked and had been working throughout the entire forenoon the platform, and all of its parts, and particularly the part where this accident happened, was constantly under their observation. I think that is all, your Honor."

It will be noted that in the opening statement, plaintiff's counsel specified negligence of the defendant in stopping part way in its removal of slippery slush at the edge of the platform and also mentioned certain facts tending to support this specification of negligence.

In the case of **Droan v Traction Company, 76 Oh St 235** at page 249, and in the case of **Cleveland Railway v Masterson, 126 Oh St 42,** it is held that a plaintiff can recover only upon the allegations of his petition. so that in determining the question of whether the trial court erred in granting defendant's motion for judgment on plaintiff's opening statement, it is not necessary to consider the specifications of negligence incorporated in the opening statement but not contained in the petition, or facts charged in the opening statement not tending to support the allegations of the petition.

As the added specification of negligence has no bearing on plaintiff's right of recovery under her petition, the decision in the case of **Union News Company v Freeborn, 111 Oh St 105,** based on the active negligence of the defendant in placing before the plaintiff a new situation of danger of which she had no knowledge and of which no attempt was made to apprise her, has no application to this case.

In connection with the facts charged in the opening statement of plaintiff, it is necessary to consider other facts of common knowledge with knowledge of which both plaintiff and defendant are charge-

able. One of these facts is that retail stores of the kind operated by the defendant are, in the season of the year during which plaintiff sustained her injuries, heated to a temperature of seventy degrees or more above zero. Other of such facts are that snow taken from streets and sidewalks where the temperature is below the freezing point, into a retail store premises heated to a temperature of seventy degrees, will within a very short time melt into water; and the presence of slush (partially melted snow) derived from snow brought into such premises as aforesaid, shows there has been no appreciable lapse of time from the time such snow was brought on said premises; and where people are continually coming into said premises from streets and sidewalks covered with snow of a depth of from two to three inches and at a temperature below freezing, such people will carry on their shoes quantities of snow which through their movements and the increased temperature will drop from their footwear and be deposited on the floor of such premises, and that the deposit of snow on the floor of such premises and the melting of such snow will be a continuing process so long as there is no material change in the exterior and interior conditions.

The fact that the plaintiff's fall was caused by slush on the platform at the head of the stairs, shows that the snow from which such slush was derived had not been there an appreciable length of time from the time it was deposited at the location, and the other conditions of temperature and snowfall and the continuous movement of persons from such snow covered sidewalk and streets into said premises, described in plaintiff's statement, show that the deposit of snow and slush at this point was a continuing natural process of which the plaintiff as well as the defendant was charged with notice and knowledge, such things being a matter of common knowledge.

The fact that a servant of the defendant had mopped a portion of the platform between the platform and within a foot of the edge of the stairway does not tend to prove negligence on the part of the defendant. It only tends to prove notice to the defendant of the conditions, (of which both it and the plaintiff were charged as a matter of common knowledge), and in exercise of care on the part of the defendant to remedy these conditions which, on account of the deposit of snow and slush being a continuous and continuing process which would change only with the termination of the physical conditions causing it, were at the time not remediable, and which on account of the space involved and the continuous movement of people over this space could not in any event be remedied simultaneously. Nor does the fact that defendant within a few minutes after the occurrence of plaintiff's injuries, placed non-skid mats on the platform, show negligence on the part of defendant as evidence of such fact is inadmissible to show negligence.

The case therefore comes squarely within the rule announced in the case of S. S. Kresge Co. v Fader, 116 Oh St 718, the second paragraph of the syllabus in which case reads as follows:

"The fact that during a rain-storm some water was blown into the front of a store on account of the opening of the door to admit customers, and the incoming shoppers during such rain-storm carry in moisture on their clothing and feet and umbrellas, and thereby and only thereby cause the floor inside the door and near thereto to become damp and more slippery than is the dry floor in other parts of the store, will not give rise to a cause of action against the owner or lessee of the store in favor of a later incoming patron who slips or falls on such damp floor and is injured by such fall."

The static condition in that case was a continuing rainstorm while the static condition in this case is the presence of two or three inches of snow on the streets and sidewalks adjacent to the premises, the variance of temperature between the exterior and interior of the premises and the continuous carrying in of snow from the streets and sidewalks and the depositing of the same on the premises. The static conditions in both cases arise from natural causes and require the application of the same rule.

Furthermore, an unrebutted inference of contributory negligence on the part of the plaintiff arises from the charge in the opening statement that plaintiff, because of the fact that a large number of people were on the stairs coming up and going down, did not observe and had no opportunity of observing that the last foot or so (of the platform immediately at the head of the stairway which she was approaching) was still covered with water and

slush. Reasonable minds, under this state of facts, can reasonably reach no other conclusion than that if she did not see the slush and snow on the platform at the head of the stairway, and was contributorily negligent as a matter of law in proceeding to the stairway for the purpose of descending without observing the approach to it, and that such negligence on her part was a proximate cause of her injuries.

For the reasons mentioned, the motion of defendant for judgment on plaintiff's trial statement, was properly granted, and the judgment of the lower court will be affirmed.

KLINGER, PJ, concurs.
CROW, J, dissents.

### DISSENTING OPINION

By CROW, J.

In connection with the other determinative facts pleaded by plaintiff and embraced in the trial statement of her counsel, the fact that it was snow brought into the store from the street, makes the situaion no different than it would have been if slippery trash of any kind whatsoever had been brought in from the street as was the snow, and had caused plaintiff to fall, there being no claim and no foundation for a claim that the wet and slippery snow in the store was directly there by the act of God.

The paramount questions involved in the controversy, were whether defendant who had invited plaintiff to come upon its premises, exercised ordinary care to guard her against danger, and also whether plaintiff failed to exericse ordinary care for her own safety.

Those questions with the other controlling ones were so presented by plaintiff's pleading and the trial statement of her counsel, that when liberally construed in favor of plaintiff, a variety of circumstances were shown from which reasonable minds would be justified in arriving at opposite. conclusions. Therefore the case should have gone to the jury.